Mark Wesley WATSON, Petitioner–
Appellant,

v.

Richard L. DUGGER, Respondent–
Appellee.

No. 90–3921.

United States Court of Appeals,
Eleventh Circuit.

Oct. 22, 1991.

Randolph P. Murrell, Asst. Public Defender, 2nd Judicial Circuit, Tallahassee, Fla., for petitioner-appellant.

Charlie McCoy, Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before EDMONDSON, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

RONEY, Senior Circuit Judge:

Mark Wesley Watson appeals the denial of habeas corpus relief from his conviction for sexual battery in Florida, the issue at trial being consent. He contends that his constitutional rights were violated because the trial court did not require the State to prove each element of the crime beyond a reasonable doubt when it failed to instruct the jury that the circumstances must show that either the victim "effectively communicated her refusal" to the defendant, or that he "should reasonably have known that" the victim was refusing. The state court gave the standard jury instructions: that the State must prove intercourse was accomplished "with actual physical force like-ly to cause serious personal injury" and "without the consent of" the victim. The district court held that the issue was one of state law, previously ruled upon by the state court. The district court also held that, in any event, there was no constitutional error in the failure to give the requested charge. We affirm.

On the evening of the incident, the victim, who we shall refer to as R.S., was out with her boyfriend at a local bar and restaurant in Tallahassee, Florida. While there, the couple shared a carafe of wine before they became involved in an argument. R.S.'s boyfriend left the establishment shortly thereafter but R.S. elected to remain. She left the bar when it closed at 2:00 a.m. and began the mile or mile-and-a-half walk back to her home.

Along the way, R.S. encountered the defendant and two companions who offered to give her a ride. The defendant testified at trial that an argument ensued between one of his friends and the victim. He maintains that R.S. walked away angrily and that he followed her in an effort to console her. Once he caught up to her they began kissing and eventually engaged in sexual intercourse. Apparently, all this took place in the back yard of a homeowner in the area. After nearly 30 minutes of what he perceived as a fight between a boyfriend and girlfriend, the homeowner came out with a gun to investigate the disturbance. At that point, R.S. began to scream and ran behind the homeowner for protection. She indicated that the petitioner had choked her and had intercourse with her against her will.

The victim testified that she lost consciousness at some point during the incident and could not be certain whether she consented or not. While the petitioner suggested to the jury that alcohol was responsible for the blackout, one of the victim's examining physicians indicated that a blow to the victim's head may have caused a concussion resulting in the loss of memory. The victim did state that she was con-

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals of the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

vinced, based on what she did remember, that she did not consent to the sexual contact. The testimony of several witnesses supported her theory. The homeowner and his wife indicated that they heard repeated slapping sounds during the argument, and heard the woman say: "I can't breathe, you are hurting me." Officers on the scene testified that after the incident the victim's clothing was torn, her face was badly bruised and swollen, and marks around her neck suggested that she had been strangled in some manner. During his testimony, the petitioner admitted choking R.S. but maintained that he did so only to keep her quiet when the homeowner approached with a weapon.

The jury returned a guilty verdict on the charge of sexual battery and the trial court sentenced the petitioner to thirty years in prison. On appeal, Florida's First District Court of Appeal upheld petitioner's conviction but remanded for resentencing. The petitioner then invoked the conflict jurisdiction of the Florida Supreme Court in a petition for review. Fla.R.App.P. 9.030(a)(2)(A)(iv). That court denied review. On August 12, 1988, the petitioner filed a writ of habeas corpus in the Northern District of Florida. The case was assigned to a magistrate judge who recommended that the State's motion for summary judgment be granted. The district court adopted the magistrate judge's recommendation and issued a certificate of probable cause.

Petitioner argues that the due process claim presented by this appeal revolves solely around a question of state law. The only issue is whether the standard jury instructions given by the state trial court adequately presented to the jury the sexual battery law of Florida. If they do, then the state court followed Florida law and the thrust of petitioner's claim is lost. If they do not, then the petitioner would prevail on his due process claim.

We first look to state law. Watson lost his claim in the trial court and in the Florida intermediate court of appeal. Both held that Watson's request for additional jury instructions was not necessary to properly instruct the jury on the state law under which he was charged. *Watson v. State*, 504 So.2d 1267, 1269 (Fla.Dist.Ct. App.1986). The Florida Supreme Court denied a petition for certiorari. *Watson v. State*, 506 So.2d 1043 (Fla.1987).

Over fifty years ago the United States Supreme Court instructed the federal courts on the authority to be given intermediate appellate courts of a state in defining state law. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.* (citations omitted) (emphasis added).

*Id.* at 237, 61 S.Ct. at 183. This Circuit has consistently followed this practice. *See e.g., Garcia v. Perringer*, 878 F.2d 360, 362 (11th Cir.1989); *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1257 n. 14 (11th Cir. 1988).

The magistrate judge seemed to think that the Florida Supreme Court's denial of Watson's petition for review gave some imprimatur to the holding of the intermediate court. In Florida, however, the Supreme Court's conflict jurisdiction is discretionary, not mandatory, and a denial of a petition for review was not necessarily a decision on the merits. The final ruling in this case, therefore, is from the court of appeals. This ruling must be followed as the law of the State unless we are convinced "that the highest Court of the State would decide otherwise." *West v. American Tel. & Tel. Co.*, 311 U.S. at 237, 61 S.Ct. at 183. "[T]he federal court is not free to apply a different rule however desirable it may believe it to be, and even

though it may think that the state Supreme Court may establish a different rule in some future litigation." *Id.* at 238, 61 S.Ct. at 184. *See also Royal Health Care Servs., Inc. v. Jefferson–Pilot Life Ins. Co.,* 924 F.2d 215, 216 (11th Cir.1991).

It is not necessary to our decision to decide the merits of petitioner's argument that the standard jury instructions leave out an element of the crime that the prosecution must prove. We simply have to divine what the Florida Supreme Court would hold in that regard. It is also noteworthy that able counsel has not cited any case in which that Court reversed a conviction because something more than the standard jury instructions was not given.

The defendant requested these two instructions:

(1) The first instruction mirrored the standard jury charge for sexual battery and then added this clause: ... and the circumstances were such that either [the victim] effectively communicated her refusal to Mark Watson, or that Mark Watson reasonably should have known that [the victim] was refusing.

(2) The crime of sexual battery must be committed intentionally. The State must prove beyond a reasonable doubt that the assailant knew he was acting without the consent of the alleged victim.

Petitioner maintains that by requiring only a showing of lack of consent, the standard jury instructions incorrectly focus solely on the mindset of the victim and allow the jury to convict without the necessary finding of intent. He argues that several other states have accepted this reasoning and have held that a defendant is entitled to an instruction indicating that a reasonable, good-faith belief that the victim consented is a defense to a rape charge. *See, e.g., State v. Smith,* 210 Conn. 132, 554 A.2d 713, 715–17 (1989); *People v. Mayberry,* 15 Cal.3d 143, 125 Cal.Rptr. 745, 752–55, 542 P.2d 1337, 1344–47 (1975); *People v. Bruce,* 208 Cal.App.3d 1099, 256 Cal.Rptr. 647, 649 (1989); *cf. People v. Hale,* 142 Mich.App. 451, 370 N.W.2d 382, 382–83 (1985) (court not required to give reasonable belief in consent instruction *sua sponte*). He fur-

ther contends that under the standard jury instructions, the jury could return a verdict of guilty based solely on the conclusion that the victim did not in fact consent. This would be the case even if the jury decided that the defendant reasonably and justifiably believed that she had consented.

In Florida, sexual battery is a general intent crime. *See Askew v. State,* 118 So.2d 219 (Fla.1960). The State need not demonstrate a specific intent on the part of the defendant to engage in sexual conduct without the consent of the victim. *Id.* at 222; *cf. Bass v. State,* 263 So.2d 611 (Fla.Dist.Ct.App.1972) (assault with intent to commit rape is a specific intent crime requiring State to prove defendant knowingly and willfully accosted victim with intent to engage in intercourse without consent); *Manning v. State,* 93 So.2d 716 (Fla. 1957) (same). General intent crimes, however, still require some showing of culpability, either a knowing, reckless, or negligent, rather than intentional, action. P. Lowe, J. Jeffries, Jr., & R. Boone, *Criminal Law: Cases and Materials* 232 (1982). In general intent crimes, the element of intent is presumed from the actions constituting the offense. *Askew,* 118 So.2d at 222; *State v. Oxx,* 417 So.2d 287, 290 (Fla. Dist.Ct.App.1982).

Florida law starts with the supposition that all sexual contact must be consensual. "Consent" is a term of communication. An individual consents to something by giving some affirmative indication of their approval, either verbally or through their actions. Consent, therefore, requires some kind of overt gesture sanctioning or endorsing the proposed conduct. When the jury finds a "lack of consent," it necessarily determines that there was no communication between the victim and the defendant on this issue, and no affirmative or overt indication of approval. By finding a lack of consent, the jury establishes that the victim neither verbally nor through actions gave the defendant any reason to believe that permission was given to engage in intercourse. For the jury to find that the defendant had an objectively reasonable, good-faith belief that the victim

consented would require it to find that the victim communicated approval or assent in some manner. The jury's finding of lack of consent, however, precludes any such finding.

The petitioner would require the victim to make an affirmative indication of lack of consent. The defense to the crime, however, is that there was an affirmative showing of consent. By demonstrating the lack of consent, the State conclusively establishes that the victim gave no signs affirmatively consenting to the defendant's acts. Florida courts have repeatedly held that the victim need not struggle or scream when confronted with such threats of force. *See State v. Rider*, 449 So.2d 903 (Fla.Dist.Ct.App.), *review denied*, 458 So.2d 273 (Fla.1984).

In this case, therefore, we think that the Florida Supreme Court would not hold contrary to the intermediate court's ruling that the standard jury instructions on sexual battery properly conveyed Florida law in this case.

■■■■ A federal court may find a due process violation if the failure to give additional requested instructions beyond those necessary for the offense makes the trial "fundamentally unfair." *Johnson v. Dugger*, 817 F.2d 726, 729–30 (11th Cir.1987). One cannot conclude in this case that the absence of the instructions deprived the petitioner of a fair trial.

*First*, defense counsel was permitted to make his argument to the jury about reasonable belief as to consent. During his closing argument, counsel suggested that under the circumstances it was not unreasonable for petitioner to believe the victim consented to the act. Both parties had been drinking, it was late, and not even the victim could remember if she consented or not.

*Second*, the requested instructions did not accurately state Florida law. A victim is not required to effectively communicate lack of consent in a sexual battery case.

*Third*, viewing the evidence most favorably to support the jury verdict, it strongly suggests that defendant could not reason-ably have believed he had the victim's consent. The victim suffered relatively severe injuries to her face, had marks around her neck which indicated strangulation, and testified that the defendant told her to "be quiet if she ever wanted to see her family again." The individuals who overheard much of what transpired testified that they heard the woman tell the man that she could not breathe and that he was hurting her. Moreover, they heard repeated slapping noises during the incident. Under these circumstances, there is little basis to contend that the petitioner held an objectively reasonable belief that the victim consented. *See Lawson v. State*, 552 So.2d 257 (Fla.Dist.Ct.App.1989), *review denied*, 563 So.2d 632 (Fla.1990) (jury instruction which left out necessary element of offense was harmless because evidence sufficiently established missing element).

Since we conclude that Florida law, as courts have established, would not require reversal of a sexual battery conviction for giving the standard jury charge and for refusal to give the instructions requested by the defendant in this case, any argument that a due process violation occurred because the Florida courts failed to follow Florida case law must fall.

The state has argued that the petitioner has failed to properly exhaust his federal constitutional argument in the state courts and is now procedurally barred in federal court. At trial, on direct appeal, and again on petition for review in the Florida Supreme Court, the petitioner consistently maintained that the instructions that were given did not fully convey applicable Florida law. Petitioner now raises the constitutional claim that the failure to prove each element beyond a reasonable doubt violates his right to due process. *See Sandstrom v. Montana*, 442 U.S. 510, 523, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979).

■■■■ Defendants in state courts need not couch all of their claims in constitutional terms to preserve a constitutional issue for federal habeas corpus review. *See, e.g., Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct.

723, 79 L.Ed.2d 184 (1984) (listing alternative methods of exhausting federal constitutional issues in state court without specifically referring to them in constitutional terms). Instead, they need only present the *substance* of a federal constitutional claim to the state courts in order to exhaust the issue and preserve it for review in a federal habeas corpus proceeding. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). When a federal habeas petitioner presents what amounts to "a mere variation in the same claim rather than a different legal theory...." *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981), he has presented the state courts with the substance of his claims and thus has properly exhausted them. In *Hutchins v. Wainwright*, 715 F.2d 512 (11th Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984), we concluded that a petitioner who had challenged the admission of certain out-of-court statements on state hearsay grounds had adequately presented and preserved a federal constitutional claim concerning the violation of his Sixth Amendment right to confront the witnesses against him.

To the extent that defendant's constitutional claim is based on the failure of the Florida court to follow Florida law, petitioner presented both the state and federal courts with the identical claim, namely that he had been convicted despite the prosecution's failure to demonstrate each element of the offense. In both forums, the only question is whether all of the elements of sexual battery under Florida law have been demonstrated in this case. *Cf. Lanigan v. Maloney*, 853 F.2d 40, 44–46 (1st Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989) (objection to reasonable doubt instruction in state court sufficient to exhaust constitutional claim premised on same issue); *Hawkins v. West*, 706 F.2d 437, 439 (2d Cir.1983) (same). As a result, we conclude that by contending that the trial court misapplied Florida law and allowed the jury to convict without the necessary showing of criminal intent, petitioner adequately raised and exhausted in state court the federal due process claim he now presents to this Court.

AFFIRMED.