[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-14318

————————————————

SASHA NICOLE PRINGLE,

                                        Petitioner-Appellee,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

                                        Respondents-Appellants.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-00035-HES-PDB

————————————————

Before ROSENBAUM and LAGOA, Circuit Judges, and SINGHAL,* District Judge.

SINGHAL, District Judge:

Appellee Sasha Nicole Pringle ("Pringle") was convicted at trial of leaving the scene of a fatal car crash based upon evidence that her reckless driving caused another driver to lose control of her vehicle, resulting in that vehicle tumbling over the side of a bridge, after which Pringle continued driving to her destination. At Pringle's trial, the court read then Florida Supreme Court approved jury instructions that required the State to prove beyond a reasonable doubt the four elements of the crime, including that Pringle had either actual or constructive knowledge of the crash.

Pringle filed a series of unsuccessful state court post-conviction proceedings challenging this jury instruction, relying upon a subsequent Florida State Supreme Court decision which held that this standard jury instruction was contrary to Florida law because constructive knowledge is insufficient to satisfy the knowledge element of the crime. The District Court for the Middle District of Florida granted Pringle's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, finding that Pringle's Fourteenth

---

* The Honorable Raag Singhal, United States District Judge for the Southern District of Florida, sitting by designation.

Amendment due process right to a fair trial was violated because the State was not required to prove beyond a reasonable doubt every element of the crime in order to convict Pringle. On appeal, the State argues that (1) Pringle's due process claim is procedurally barred because she did not exhaust her state court remedies and (2) Pringle was not entitled to relief on the merits of her claim based on substantial evidence from which the jury could have concluded beyond a reasonable doubt that Pringle had actual knowledge of the accident that caused the fatality.

After careful review and with the benefit of oral argument, we reverse the district court's holding that Pringle exhausted her state court remedies. We remand with instructions to dismiss Ground Six of Pringle's petition as procedurally barred.

## I.    FACTUAL BACKGROUND

On February 27, 2010, Pringle was involved in a traffic accident in Duval County, Florida, which resulted in the death of female victim, Luma Kajy.

On the night of the accident, Pringle got into a heated argument with her husband. The argument escalated and Pringle left in her blue 2002 Honda Civic ("Honda"). Mr. Pringle followed her for a few miles as she travelled on the I-295 ramp and pulled over to call 911 when he observed she was driving erratically.

A witness, Jeffry Tibbetts, testified he saw a Honda weaving across the three lanes of I-295 and another car with its flashers on. He testified that he tried to get the attention of the driver of the

Honda by blaring his horn, but the driver did not acknowledge him.  Mr. Tibbetts called 911, and provided the description of the driver, the car, and the tag number.  Another witness, Stephen Kohn testified that he saw a blue Honda swerving all over the road and reported the driver to Florida Highway Patrol.

Mr. Kohn continued to observe the Honda traveling in the second lane as he was driving in the third lane.  Mr. Kohn repositioned his car behind the Honda as they approached the Buckman Bridge.  While approaching the peak of the bridge, an SUV tried to pass them on the inside lane, the lane closest to the emergency lane.  As the SUV attempted to pass, the Honda veered into that lane, resulting in the SUV subsequently veering into the emergency lane.  Both vehicles over-corrected and lost control.  The Honda regained control, but the SUV did not, turning sideways on the bridge, flipping over the wall, and falling several stories into the water.  Mr. Kohn is the only witness to testify he saw an impact between the Honda and the SUV before the SUV plunged into the water, but others testified that they saw sparks coming from the SUV as it was skidding.

After the accident occurred, Pringle exited I-295 and arrived at the home of Melinda Holt between nine and ten that evening.  Ms. Holt testified that Pringle looked upset and concerned when she arrived.  The police arrived about five minutes later.

Officer T.C. Hall was one of the officers who arrived at Holt's apartment and testified that Pringle denied having any knowledge of an accident when he questioned her.  Officer Stephen

Votava testified that Pringle told them she had a fight with her husband. Both officers testified that Pringle was impaired. Officer Votava observed Pringle had an unsteady gate, slurred speech, and appeared confused.

Corporal David Bazinet, an investigator with FHP, testified he observed Pringle to have glassy, watery eyes that were dilated. When asked on cross-examination, Corporal Bazinet admitted he did not find any physical evidence that a second car was involved in the accident, which resulted in the SUV falling off the bridge and into the water. He found no evidence that a second vehicle fishtailed or rolled over.

At trial, aside from eyewitness testimony, the State introduced a recorded telephone conversation that Pringle made from jail after her arrest, testimony from a series of experts in traffic-homicide reconstruction, and testimony from experts in the field of forensic toxicology. Pringle introduced only one defense witness, her mother, who testified to events which occurred in the morning before the accident.

## II.　PROCEDURAL HISTORY

### A. Trial

The State of Florida charged Pringle with driving under the influence manslaughter in violation of sections 316.193(1) and (3), Florida Statutes ("Count 1"), leaving the scene of an accident involving death, in violation of 316.027, Florida Statutes ("Count 2"), and vehicular homicide in violation of section 782.071(1)(a),

Florida Statutes ("Count 3"). Pringle plead not guilty, and the matter was set for trial in Duval County state court. At trial, the court read the Florida Standard Jury Instruction in Criminal Cases for the leaving the scene of a fatal crash charge, which included an instruction that the State must prove beyond a reasonable doubt that "Pringle knew or should have known that she was involved in a crash." Pringle did not object to the jury instruction at the time.

On October 6, 2010, the jury deliberated for fifty-five minutes before finding Pringle guilty on all counts. The state court sentenced Pringle to thirty years' imprisonment, consisting of fifteen years for Count 1 and thirty years for Count 2, to be served concurrently. The court did not sentence Pringle in connection with the vehicular homicide count because it was redundant in light of the guilty verdict for driving under the influence manslaughter. Judgment was entered on November 9, 2010.

## B.  State Court Appeal and Post-Conviction Proceedings

Pringle's appointed counsel filed a direct appeal no-merits brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and a motion to permit *pro se* briefing. The court granted the motion to permit *pro se* briefing, but Pringle did not file a *pro se* brief. On October 31, 2011, the First District Court of Appeal issued a per curiam affirmance without written opinion.

Pringle proceeded to file two motions for postconviction relief accompanied by memorandums of law in Florida state court. The original motion was filed by retained counsel. The amended

motion was filed by Pringle *pro se* and adopted counsel's original motion. In both motions, Pringle raised two claims for ineffective assistance of counsel under Rule 3.850(a)(6). As relevant here, a portion of Ground Three of Pringle's *pro se* motion stated the following:

> Pursuant to Rule 3.850(a) 1, the judgment was entered or sentence was imposed in violation of the Constitution or Laws of the United States or the State of Florida. . . . [T]he statute does not address if the standard jury instructions requires [sic] <u>actual</u> knowledge of the crash that involved a death, an essential element of the crime. (emphasis in original).

Pringle argued that she had no knowledge of a crash and that without actual knowledge of the crash, she could not have willfully violated Fla. Stat. § 316.027(1)(b). In the accompanying memorandum of law, Pringle exclusively cited to Florida case law, including *Dorsett v. State*, 158 So. 3d 557 (Fla. 2015), in which the Florida Supreme Court held—five years after Pringle's trial—that the standard jury instruction for a willful violation of Section 316.027 should require actual knowledge, not constructive knowledge, of the crash. The court denied Pringle's amended *pro se* motion for postconviction relief, failing to address the portion of Ground 3 that related to the jury instruction.

Pringle appealed the denial, asserting substantially the same arguments using the same language. Florida's First District Court of Appeal affirmed the denial of post-conviction relief in a per curiam order without written opinion. Pringle moved for a rehearing

and written opinion, and the First District Court of Appeal summarily denied the motion.

## C.  Federal Court Habeas Corpus Proceedings

Pringle filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Middle District of Florida. Ground Six of Pringle's application articulated a claim that Pringle's due process right to a fair trial under the Fourteenth Amendment was violated based on the State not being required to prove beyond a reasonable doubt every element of the crime of leaving the scene of an accident involving a death.  In particular, Pringle claimed that the jury instructions used in her trial misstated Florida law by permitting the State to convict her based on constructive knowledge of the crash as opposed to actual knowledge.

The district court held that Pringle exhausted her state court remedies with respect to this claim because she "adequately presented a claim of constitutional dimension" in her state court filings.  Relying upon *Dorsett* and a similar Florida Court of Appeal case, the district court held that the jury instruction "misinformed the jury of a contested 'essential element' of the crime, the actual knowledge of involvement in a crash."  Reviewing the evidence presented at trial, the district court found that the issue of whether Pringle had actual knowledge of the accident was "very hotly contested."  Therefore, the district court granted relief on this claim because the misstatement of law "so infected the entire trial that the resulting conviction violates due process."  In light of this

finding, the district court entered judgment granting conditional relief in favor of Pringle on the claim.

The State moved to alter or amend the judgment, arguing that Pringle had failed to exhaust the claim in the state court proceedings. The district court denied the motion. The State appealed.

## III.    STANDARD OF REVIEW

"We review *de novo* a district court's grant or denial of a habeas corpus petition." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010). And we review *de novo* a district court's ruling on a procedural bar question. *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012). Finally, because we are reviewing whether Pringle has exhausted her federal habeas claims in state court, we review the mixed question of law and fact *de novo*. *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016).

## IV.    DISCUSSION

District courts are not permitted to grant an application for a writ of habeas corpus brought by a person in custody based upon a state court judgment unless the person first exhausts the remedies available in the state courts, subject to two narrow exceptions not implicated here. *See* 28 U.S.C § 2254(b)(1). The purpose of this exhaustion requirement is to permit the state court a first pass at reviewing and remedying purported violations of its prisoners' federal rights. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). In

service of this purpose, "the federal claim must be fairly presented to the state courts." *Id.* In this appeal, the State argues that Pringle did not "fairly present" her federal due process claim based on the faulty jury instruction to the state courts prior to raising the claim in her federal habeas corpus petition.

This issue turns on the level of specificity required to "fairly present" the federal claim to the state courts. "[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). While we do not place "draconian" or "formalistic" requirements upon petitioners presenting their claims at the state court level, petitioners still must present their claims in such a way that a "reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Id.* at 1344–45. Petitioners must "do more than scatter some makeshift needles in the haystack of the state court record"—"[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Id.* at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir.1988)). The State primarily challenges whether Pringle presented a sufficiently specific federal legal basis for her claim that the jury instruction used at her trial was faulty when raising this claim in state court.

We considered the issue of exhaustion in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005). In *McNair*, we held that a

petitioner failed to exhaust his state court remedies in connection with his federal habeas petition claim that his Sixth Amendment rights were violated when the jurors for his criminal trial considered extraneous evidence in the form of a Bible, which the jury foreman, a Christian minister, brought into the jury room and from which he read aloud to the other jurors. *Id.* at 1301–04. In the petitioner's initial state court appeal, he relied exclusively on state law, and captioned his argument as involving a violation of state law. The only mention of federal law was in a string citation and a reference in the closing paragraph to his argument that the jurors' consideration of the extraneous evidence violated his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *Id.* at 1303. When petitioning the Alabama Supreme Court for certiorari, the petitioner again did not cite a single federal case on the extraneous evidence issue and repeated the same concluding paragraph mentioning the United States Constitution. *Id.* His brief in support of the petition mirrored the references to federal law in his initial appeal. *Id.*

Under these circumstances, we held that the petitioner had not fairly presented his federal constitutional claim to the state courts because his federal constitutional claim resembled a "needle[] in the haystack" within what was otherwise a state law claim under a state law standard supported by state law opinions. *Id.* at 1303–04.

We have continued to apply the requirement set out in *Kelley* and refined in *McNair* that it is not enough for a habeas petitioner to merely set out the factual substance of a federal claim—the petitioner must also put the state courts on notice that the petitioner is asserting a federal claim by indicating the invocation of a federal legal standard. *See, e.g.*, *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458–59 (11th Cir. 2015) (holding that a petitioner failed to exhaust his state court remedies when he never asserted in state court briefing that he intended to raise a federal claim, did not cite any federal cases or mention any federal constitutional provision, and did not reference the case setting out the applicable federal legal standard for his claim); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012) (holding that a petitioner failed to exhaust his state court remedies when he generally referred to a "constitutional right of confrontation of witnesses" and did not cite to any constitutional provision or cases discussing this right under the federal or state constitutions in his state court briefing and where both the state and federal constitutions provided a right of confrontation of witnesses); *Johnson v. Florida*, 32 F.4th 1092, 1096–97 (11th Cir. 2022) (petitioner failed to exhaust state court remedies when he grounded his speedy-trial claim on state law and never cited the Sixth Amendment except for in a motion to proceed *pro se*).

Here, in Pringle's *pro se* amended 3.850 motion for postconviction relief in state court, Pringle challenged the jury instruction read at her trial in connection with the charge of leaving the scene

of a fatal crash, claiming that the judgment and sentence were "imposed in violation of the Constitution or the laws of the United States or the State of Florida." Consistent with this language, Pringle labelled her claim as arising under Florida Rule of Criminal Procedure ("Rule") 3.850(a)(1) but otherwise based her arguments exclusively on Florida law. She applied this same label and used the same quoted language in both her direct appeal from the denial of her amended 3.850 motion and her *pro se* motion for rehearing from the denial of her 3.850 appeal.

When considering Pringle's subsequent petition for writ of habeas corpus filed in the District Court for the Middle District of Florida under 28 U.S.C. § 2254, the district court provided minimal analysis regarding the issue of whether Pringle exhausted her state court remedies with respect to the jury instructions claim, writing instead that Pringle "presented a claim of constitutional dimension" in her *pro se* amended Rule 3.850 motion and appeal.

In line with our prior decisions, presenting a claim of constitutional dimension in state court without reasonable identification of the claim's federal legal basis is insufficient to exhaust state court remedies. A petitioner is required to present her claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Picard*, 404 U.S. at 277. To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." *Jimenez v. Fla. Dep't of Corr.*, 481

F.3d 1337, 1342 (11th Cir. 2007) (per curiam) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Pringle provided even less content that could put the state courts on notice that she intended to raise a federal due process claim than the petitioner in *McNair* did. In *McNair*, the petitioner at least cited to a federal case and referenced rights protected under four amendments to the United States Constitution in his state court briefing, despite otherwise arguing his claim exclusively under state law. In the present case, Pringle's state court briefing referenced "the Constitution or the laws of the United States" but otherwise presented the jury instruction claim as involving state law alone. This is insufficient to fairly present a federal claim to the state courts. Consequently, the district court erred in finding that Pringle had exhausted her state court remedies with respect to her federal due process claim challenging the jury instruction used in her trial.

Pringle seeks to distinguish *McNair* by pointing to McNair's characterization of his argument as relying exclusively on state law, both in the caption to the relevant section of his filings as well as the discussion of the issue, which Pringle's filings did not do. While this may be the case, McNair's filings also included a citation to a federal case and a direct reference to particular amendments to the United States Constitution, neither of which Pringle's filings

included.  Not only that, Pringle asserted in her state-court filings that her sentence was imposed "in violation of the Constitution or Laws of the United States *or the State of Florida*."  The question is whether a reasonable reader would understand the legal basis and factual foundation for a claim.  While certainly not identical cases, we are not persuaded that the differences between McNair and Pringle's cases are so substantial that a reasonable reader would have understood Pringle, but not McNair, to be asserting a federal legal claim.

Pringle also attempts to rely on *Lucas* to argue that her general reference to "the Constitution or the laws of the United States" and citation to Rule 3.850(a)(1), as opposed to the other subsections of Rule 3.850(a), is sufficient to alert the state courts to the federal constitutional nature of her claim.  In *Lucas*, we described the exhaustion standard by quoting from *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), in which the Court discussed the minimal burden placed on litigants to make the state courts aware of the federal nature of a claim.  We said a litigant could indicate that the claim is federal by including "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Lucas*, 682 F.3d at 1351 (quoting *Baldwin*, 541 U.S. at 32).

However, in both *Baldwin* and *Lucas*, the  exhaustion analysis involved petitioners raising claims by reference to a constitutional right that was available under both the state and federal constitutions, without identifying under which source of law the claim

was brought. *See Baldwin*, 541 U.S. at 32–33 (raising an ineffective assistance of counsel claim); *Lucas*, 682 F.3d at 1352–53 (raising a constitutional right of confrontation of witnesses claim). In both of these cases, adding a "federal" label would have presented to the court the precise legal claim the petitioner intended to bring. In contrast, Pringle's "federal" label was unattached to any particular descriptor or standard, surrounded by argument under state law, and additionally labelled as arising under state law. While the state courts in *Baldwin* and *Lucas* would have had notice of the federal legal theory of relief raised if a "federal" label had been included, the state courts here would have had to guess at the federal legal theory of relief Pringle intended to raise, or whether she instead only intended to reference the Florida procedural rule that provided her entitlement to relief through the Rule 3.850 mechanism.

Additionally, Pringle's attempt to rely upon her application of a Rule 3.850(a)(1) label to the claim at issue, as compared to her application of Rule 3.850(a)(6) to her other two claims, illustrates the very concern that would arise were we to find in Pringle's favor. Pringle claims that she alerted the state courts to the federal constitutional nature of her faulty jury instruction claim by directly referencing Rule 3.850(a)(1), which references "the Constitution or laws of the United States." She states that citing this provision distinguishes her faulty jury instruction claim from her other claims, with which she referenced a different subsection, Rule 3.850(a)(6), the text of which does not include any direct reference to federal law. However, in Pringle's Rule 3.850 Motion and Memorandum

of Law Through Counsel, Pringle labels her ineffective assistance of counsel claim as pursuant to Rule 3.850(a)(6), but argues that her rights under this claim are "guaranteed by the 6th Amendment to the United States Constitution." In carrying out the comparison analysis suggested by Pringle by which the state courts are meant to identify federal claims through the procedural subsection referenced, state courts would have to be persuaded that the selection of the specific subsection is meaningful, but in Pringle's own case, it is not clear that it is.

Furthermore, because Rule 3.850(a)(1) applies to violations of "the Constitution or laws of the United States <u>or</u> the State of Florida," (emphasis added), it would be perfectly plausible for a petitioner to use this subsection in connection with claims asserting only state law claims. In sum, we cannot expect state courts to infer substantive meaningfulness from the subsection of the procedural rule cited by the petitioner. This would not constitute the fair presentation of a claim to the state courts.

Pringle also argues that the substance of her claim fairly presented a federal right and that this alone is sufficient to exhaust her state remedies. Pringle supports this argument by citing to *Watson v. Dugger*, 945 F.2d 367, 372 (11th Cir. 1991), in which we held that petitioners "need only present the *substance* of a federal constitutional claim to the state courts in order to exhaust the issue and preserve it for review in a federal habeas corpus proceeding." *Watson* is also factually on point with respect to Pringle's case. In *Watson*, the petitioner challenged the jury instructions used in his case,

arguing that he was denied his federal due process rights because the jury was permitted to convict him without finding the necessary criminal intent under Florida law. *Id.* In state court, the petitioner argued that the jury instructions did not properly convey applicable Florida law; only when he reached federal court did he begin to argue that his claim was a federal due process claim. *Id.* at 371. We found that the petitioner exhausted his claim. *Id.* at 372.

In light of what appears to be inherent tension between *Watson* and *McNair*, we look to our prior panel precedent rule to determine which controls. Under this rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." *Id.* (quoting *Garrett v. University of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003)). *Duncan v. Henry*, 513 U.S. 364 (1995), undermined to the point of abrogation our decision in *Watson* and explains our subsequent departure from the *Watson* decision.[1]

---

[1] So too, *Gray v. Netherland*, 518 U.S. 152 (1996) makes clear the abrogation of *Watson*. *See e.g.*, *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1366 (11th Cir. 1999) ("[I]n order to exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief'

In *Duncan*, the Supreme Court reversed a decision by the Ninth Circuit that held that a habeas petitioner had exhausted his state remedies when he never claimed a violation of a federal constitutional right in the state proceedings. The petitioner situated his state court challenge under the California Constitution but characterized the claim as a denial of due process under the United States Constitution once he reached federal court. 513 U.S. at 364–65. In holding that the petitioner had not exhausted his state remedies, the Court stated that "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id.* at 365–66. In short, even if the substance of the claim is identical, petitioners must also give notice of a federal legal theory before the state courts.

*Duncan* marked the Supreme Court's evolution in its application of the exhaustion requirement to not only mandate that the substantive legal theory remain consistent but also that the source of the legal theory and associated controlling legal principles be apparent to state courts. The *Duncan* opinion specifically relies upon *Picard* and *Anderson v. Harless*, 459 U.S. 4 (1982), both of which involved petitioners who failed to exhaust state remedies because the petitioner changed the substantive legal theory across the

---

and must additionally articulate the constitutional theory serving as the basis for relief.") (quoting *Gray*, 518 U.S. at 163).

course of pursuing the claim. *See Picard*, 404 U.S. at 272–78 (holding that a claim was not exhausted when it was presented to the state courts as a challenge to compliance with a state indictment procedure but determined to be a federal equal protection claim under the Fourteenth Amendment in the Court of Appeals for the First Circuit); *Anderson*, 459 U.S. at 6–7 (holding that a claim was not exhausted when it was presented to the state courts as a state law challenge to a jury instruction but presented to the federal courts as a federal constitutional due process claim based upon the use of unlawful mandatory presumptions).

*Duncan* drew upon this baseline principle that the substantive legal theory must remain the same but took it a step further in requiring that notice be provided to state courts that the claim rests on a federal legal theory. In *Duncan*, the contours of the legal theory remained consistent between state and federal court—the trial court admitted improper testimony. 513 U.S. at 364–65. However, whether this was a "miscarriage of justice" under the California Constitution or a denial of due process under the United States Constitution impermissibly changed between state and federal court, procedurally barring the petitioner from relief. *Id.*

Because *Duncan* requires that state courts be apprised that a claim arises under federal law in order for state remedies to be exhausted, it undermined to the point of abrogation our decision in *Watson* that petitioners need not present anything more than the substance of a federal constitutional claim to the state courts in

order to exhaust state court remedies. Therefore, *McNair*, not *Watson*, controls.

*Duncan* equally forecloses Pringle's argument that the coextensive nature of the due process guarantees under the United States and Florida Constitutions alerted the state courts to the federal and state nature of her faulty jury instructions claim. Put simply, petitioners must apprise the state courts of the federal nature of their claim, even if they present the substance of a federal claim.

Relatedly, the State's appeal was premised strictly on the issue of whether Pringle fairly presented her claim in state court as a question of federal law, not whether she consistently presented the substance of a federal due process claim. While the State argued in its Reply brief that Pringle did not consistently present the substance of a federal due process claim to the state courts, we decline to consider the parties' arguments on this issue where the State did not raise it on appeal.

In sum, the exhaustion requirement in 28 U.S.C. § 2254 is significant within our constitutional system of government in preventing "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." *Picard*, 404 U.S. at 275 (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). It would be inconsistent with this purpose to permit habeas petitioners to argue state law claims under a state law standard supported by state law opinions within the state court system but then later allow them to turn around and claim that they actually meant to

argue a federal claim when they reach federal court, strictly based on a solitary reference to "the United States Constitution."  For these reasons, we hold that the district court erred in finding that Pringle exhausted her state court remedies.  Accordingly, we reverse the district court's decision and remand with instructions to dismiss Ground Six of Pringle's petition for writ of habeas corpus.

Because Pringle failed to exhaust her state court remedies with respect to her federal due process challenge to the jury instructions used in her trial, we decline to address the State's alternative argument that the district court erred in finding that Pringle was entitled to relief on the merits of her claim.[2]

## V.    CONCLUSION

For the reasons stated, we reverse the district court's order granting federal habeas relief and remand with instructions to dismiss Ground Six of Appellee's petition for writ of habeas corpus.

### REVERSED AND REMANDED.

---

[2] A court can still address the merits of a procedurally defaulted claim where "the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  Neither party addressed this issue in their briefs, nor did the district court make such a determination in its order with respect to Ground Six, so we don't address that here.