[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-11440

_____

D. C. Docket No. 98-00915 CV-T-S

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 13, 2005
THOMAS K. KAHN
CLERK

WILLIE MCNAIR,

Petitioner-Appellee,

versus

DONAL CAMPBELL, Commissioner,
Alabama Department of Corrections,
TROY KING, The Attorney General of
the State of Alabama,
LESLIE THOMPSON, Warden,

Respondents-Appellants.

_____

No. 04-12700

_____

D. C. Docket No. 98-00915 CV-T-S

WILLIE MCNAIR,

Petitioner-Appellant,

versus

DONAL CAMPBELL, Commissioner,
Alabama Department of Corrections,
TROY KING, The Attorney General of
the State of Alabama,

LESLIE THOMPSON, Warden,

                                                    Respondents-Appellees.
                        _____

                    Appeals from the United States District Court
                        for the Middle District of Alabama
                        _____
                                (July 13, 2005)


Before TJOFLAT, ANDERSON, and HULL, Circuit Judges.

ANDERSON, Circuit Judge:

        Defendant Willie McNair was convicted in Alabama state court and

sentenced to death for the robbery and murder of Ella Foy Riley.  He received a

new sentencing hearing on direct appeal and was again sentenced to death.  After

his second sentence was affirmed, McNair sought and was denied state habeas

corpus relief.  He then filed a federal habeas corpus petition pursuant to 28 U.S.C.

§ 2254.  The district court granted the petition on the basis of ineffective assistance

of counsel at the penalty phase and denied it on all other grounds.  The State

appeals the district court's grant of the petition.  McNair cross-appeals the district

court's denial of the petition with respect to his claims that (1) jurors improperly

considered extraneous evidence during the penalty phase and (2) the prosecutor

engaged in racial discrimination during jury selection in violation of McNair's

Fourteenth Amendment rights under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct.

1712 (1986). For the reasons discussed below, we reverse the district court's grant of McNair's petition on the basis of ineffective assistance of counsel and affirm the district court's denial of the petition on all other grounds.

## I. FACTS AND PROCEDURAL BACKGROUND

On the night of May 21, 1990, Willie McNair and another man went to the home of Ella Foy Riley, an elderly widow who lived alone and occasionally hired McNair to do yard work. When Riley came to the door, McNair asked her if he could borrow twenty dollars. Riley told him she had no money to lend him. McNair then asked if he could have a glass of water. Riley invited him in, and when she turned around McNair grabbed her by the neck and stabbed her in the throat. When the blade of the knife broke off in Riley's neck, McNair's companion retrieved another knife from the kitchen and McNair stabbed Riley in the neck again. The wounds severed Riley's carotid artery and jugular vein. Evidence indicated that McNair also strangled Riley, who struggled for several minutes as she bled to death. After killing Riley, McNair took her purse from the kitchen counter and fled the scene with his companion. The pair drove several miles down a rural road, rummaged through Riley's purse, then dumped it. When an officer came to his house the next morning, McNair admitted killing Riley and was

3

arrested. He subsequently directed officers to the place where he had dumped Riley's purse and gave detailed descriptions of the murder to investigators.

McNair was convicted of capital murder in the course of a robbery on April 18, 1991. He was sentenced to death following a 10-2 jury vote in favor of that penalty. The Alabama Court of Criminal Appeals confirmed the conviction, but it remanded the case for a new sentencing hearing because the sentencing judge had improperly considered as an aggravating factor a prior conviction that resulted from a nolo contendere plea. McNair v. State, 653 So. 2d 320, 327 (Ala. Crim. App. 1992). The second jury recommended a sentence of life without parole by a vote of 8-4. The court rejected this recommendation and again sentenced McNair to death. McNair's case was twice remanded for correction of the sentencing order before finally being affirmed on direct appeal. McNair v. State, 653 So.2d 351 (Ala. Crim. App. 1994). The United States Supreme Court denied McNair's petition for certiorari. McNair v. Alabama, 513 U.S. 1159, 115 S. Ct. 1121 (1995).

After his unsuccessful direct appeal, McNair petitioned for post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32 ("Rule 32"). The Henry County Circuit Court (the "Rule 32 court") issued an order dismissing as procedurally barred all of McNair's claims except (1) ineffective assistance of counsel in violation of the Sixth Amendment, (2) state failure to turn over

4

exculpatory evidence to the defense, and (3) the unconstitutionality of the death penalty due to a pattern of racial bias in its implementation. An evidentiary hearing for these claims was originally scheduled for September 22, 1995, but it was moved to November 8, 1995 on McNair's motion. The Rule 32 court entered an order denying McNair's petition on all grounds on November 13, 1995. Its order was affirmed by Court of Criminal Appeals, and the Alabama Supreme Court denied certiorari. McNair v. State, 706 So. 2d 828 (Ala. Crim. App. 1997).

McNair filed a federal habeas corpus petition in the United States District Court for the Middle District of Alabama on August 18, 1998. He alleged numerous grounds for relief, including (1) ineffective assistance of counsel at the guilt and penalty phases of his trial, (2) improper consideration of extraneous evidence by jurors during the guilt phase, and (3) Batson violations by the State during jury selection. The district court determined that several claims were entitled to review under 28 U.S.C. § 2254, and, over the State's objection, granted an evidentiary hearing on McNair's ineffective assistance claims. The hearing was held on July 27-28, 2000.

On March 12, 2004, the district court granted McNair's habeas petition with respect to the death sentence, holding that McNair received ineffective assistance of counsel at the penalty phase of his trial. The court denied McNair's petition on

5

all other grounds. The State appealed the court's decision on the ineffective assistance issue, and McNair filed a cross-appeal with respect to his extraneous evidence and Batson claims. Those appeals are now before this court.

## II. STANDARD OF REVIEW

We review de novo a district court's grant or denial of a habeas corpus petition. Wright v. Hopper, 169 F.3d 695, 701 (11th Cir. 1999). The district court's factual findings are reviewed for clear error, while mixed questions of law and fact are reviewed de novo. Id. An ineffective assistance of counsel claim is a mixed question of law and fact subject to de novo review. Id.

Because McNair filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "establishes a highly deferential standard for reviewing state court judgments." Parker v. Sec'y for Dept. of Corr., 331 F.3d 764, 768 (11th Cir. 2003). Under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). Moreover, a state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Finally, AEDPA mandates that a petitioner who failed to develop the factual basis for a claim in state court shall not be granted a federal evidentiary hearing absent certain extraordinary circumstances. 28 U.S.C. § 2254(e)(2). A district court's decision to grant or deny an evidentiary hearing is reviewed for an abuse of discretion. Kelley v. Sec'y for Dept. of Corr., 377 F.3d 1317, 1333 (11th Cir. 2004). A district court abuses its discretion by misapplying the law or making findings of fact that are clearly erroneous. Id.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The district court, after holding an evidentiary hearing, granted McNair's habeas petition on the ground that he received ineffective assistance of counsel during the penalty phase of his trial. Specifically, the court held that McNair's counsel was constitutionally ineffective for presenting lay testimony about McNair's drug use without offering additional evidence about the effects of drug addiction and its potential mitigating effects. The State argues that the district

court erred by (1) granting McNair an evidentiary hearing when McNair was not diligent in developing his claim in state court; (2) not deferring to the state court's determination on the merits as required by 28 U.S.C. § 2254(d); and (3) finding that McNair's counsel was constitutionally ineffective under the test laid out in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). For the reasons discussed below, we agree that the district court erred in granting McNair's petition.

We turn first to the State's argument that the district court erred in granting McNair an evidentiary hearing. Under AEDPA, when a federal habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim."[1] 28 U.S.C. § 2254(e)(2). The Supreme Court has held that "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432, 120 S. Ct. 1479, 1488 (2002). "Diligence," as used in section 2254(e)(2), "depends

---

[1]    § 2254(e)(2) does have two exceptions, but neither applies in this case. For example, for the newly discovered evidence exception to apply, "the facts underlying the claim [on which the petitioner seeks an evidentiary hearing] must be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Because there is no doubt that McNair is guilty of the underlying offense, the exceptions in § 2254(e)(2) are inapplicable in this case.

8

upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435, 120 S. Ct. at 1490. Accordingly, the district court should not have granted McNair an evidentiary hearing unless he made a reasonable attempt to investigate and pursue his ineffective assistance of counsel claim in state court.

In its opinion granting the evidentiary hearing, the district court "could not conclude that [McNair] had failed to develop the factual basis of this claim in the state proceedings, because the state court had foreclosed [his] attempts to develop the requisite expert testimony." McNair v. Haley, 97 F. Supp. 2d 1270, 1279 (M.D. Ala. 2000). Specifically, the district court pointed to the Rule 32 court's orders (1) denying McNair funds to hire expert witnesses, (2) denying McNair's request for on order allowing "any experts" to visit him in prison, and (3) overruling McNair's objections to the denial of the first two motions. Id. On the basis of these three orders, the district court held that McNair was entitled to an evidentiary hearing under section 2254(e)(2).

The district court's evaluation of McNair's diligence in state court failed to discuss three crucial factors. The first is the chronology of events before the Rule 32 court. McNair filed his Rule 32 petition on July 5, 1995. On August 30, 1995, the Rule 32 court dismissed numerous claims as procedurally barred and scheduled

a hearing on the ineffective assistance of counsel claim for September 22, 1995. McNair did not file a motion for discovery until September 8, 1995, and that motion included neither a motion for funds for independent mental health experts nor a motion for access. On September 19, McNair filed a motion requesting that the scheduled hearing be changed to a pre-hearing conference. The district court granted this motion, continuing the September 22 hearing and scheduling a status conference for that date instead. The Rule 32 hearing was rescheduled for November 8, 1995. McNair then waited until October 24, two weeks before the already continued hearing, to file his motion for expert funds. His motion for expert access was not filed until October 30, one week before the continued hearing and almost four months after the Rule 32 petition. Given their temporal proximity to the rescheduled hearing, granting either of these motions almost certainly would have mandated another continuance, as McNair acknowledged in his simultaneous filing of a motion for continuance on October 25. However, the district court's opinion made no mention of the belatedness of these motions.

The district court also ignored McNair's failure to adduce any evidence in support of his ineffective assistance of counsel claim when it was before the Rule 32 court. While the Rule 32 court's ruling on his motions for expert funds and access might have impeded McNair's presentation of expert testimony about the

effects of drug addiction, he faced no impediment to establishing the factual predicate underlying his claim in other ways. Aside from expert testimony, McNair could have established that predicate by testifying himself, or having his family members testify, about his drug abuse and the changes in his personality and behavior that it caused.[2] Moreover, McNair could have adduced evidence of the effects of drug addiction by offering treatises or other literature. Although ignored by the district court, McNair's failure to pursue these other means of establishing the factual predicate for his claim in the Rule 32 court is indicative of a lack of diligence.

A final and very significant factor ignored by the district court is McNair's failure to fairly present the issue of the Rule 32 court's denial of his motions in his appeal to the Alabama Court of Criminal Appeals. Although the statement of the case mentioned that the Rule 32 court had denied several motions, including those for expert funds and access,[3] the relevant section of McNair's brief discussing the claim that his counsel was ineffective for failing to introduce drug addiction evidence made no mention of the motions or their denial. The brief also never

---

[2]   In fact, McNair did offer such testimony when attempting to establish his ineffective assistance of counsel claim in his federal evidentiary hearing.

[3]   The brief failed to mention that the motions were made shortly before the already continued hearing.

urged the Court of Criminal Appeals to remand the case to permit the presentation of that evidence.[4]  In light of McNair's failures in this regard, we cannot conclude that he diligently pursued an attempt to establish the factual basis of his ineffective assistance of counsel claim in the Alabama Court of Criminal Appeals.

Taken cumulatively, the facts outlined above demonstrate that McNair was not diligent in establishing the factual basis of his ineffective assistance of counsel claim in state court.  Because the district court ignored these crucial facts, and because of our firm conviction in this regard, we have no difficulty concluding that its findings with respect to diligence were clearly erroneous.  The district court therefore erred in granting McNair a federal evidentiary hearing under 28 U.S.C. § 2254(e)(2).[5]

---

[4]      Indeed, it was not until his application for rehearing that McNair argued to the Court of Criminal Appeals that his Rule 32 evidentiary hearing was unfair, listing, among other reasons, that the Rule 32 court had denied his motions for expert funds and access.  We cannot conclude that such belated presentation of the issue to the appellate court – at a time when the State could no longer respond, after the issues for appellate review had been joined, and after the decision of the appellate court – constituted a diligent pursuit of the issue on appeal or a reasonable attempt to pursue the claim in state court.

[5]      At oral argument, McNair argued that the state court's denial of several discovery motions made it futile for him to pursue his desired discovery in the Rule 32 court.  McNair has waived that argument on appeal by raising it for the first time at oral argument.

Even if McNair had not waived the argument, our review of the proceedings leading up to the evidentiary hearing in the Rule 32 court persuade us that any such futility claim would fail.  McNair filed his first discovery motion on September 8, 1995, seeking discovery of matters in the prosecution files and certain other law enforcement, correctional, medical, and mental health records.  With particular relevance to this case, the discovery request for mental health records at the various state facilities was granted on September 22, 1995.  On that same date, the discovery request was also granted with respect to medical records, law enforcement records, and

We now turn to the State's argument that the district court erred by not deferring to the state court's determination of McNair's ineffective assistance of counsel claim. When a claim is adjudicated on the merits in state court, AEDPA bars a federal court from granting habeas corpus relief on that claim unless the state court determination "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6] 28 U.S.C. § 2254(d). The district court declined to apply this bar, reasoning that no state court had adjudicated McNair's ineffective

---

correctional records. In addition, open file discovery was granted to McNair with respect to the prosecution files. We cannot conclude that collateral counsel could reasonably have deemed it futile to promptly move for funds for expert assistance or for access, just as we cannot conclude that counsel was diligent in waiting until just one and two weeks before the scheduled hearing to file such motions. As noted in the text, granting of such belated motions would necessarily have mandated another continuance, a fact virtually acknowledged in McNair's simultaneously filed motion to continue the November 8, 1995, hearing.

Finally, even if our assessment of the proceedings in the Rule 32 court were erroneous, there still would be no excuse for collateral counsel's failure to diligently pursue the matter in the Court of Criminal Appeals.

[6] The relevant provision reads, in full, as follows:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).

assistance of counsel claim on the merits while considering the evidence before the district court after its evidentiary hearing.  McNair v. Campbell, 307 F. Supp. 2d 1277, 1311 (M.D. Ala. 2004).  However, because the district court erroneously granted the evidentiary hearing, evidence adduced therein cannot serve as a basis for habeas relief.  We conclude that section 2254(d) applies with full force, and the district court erred in disregarding it.

Applying section 2254(d), it is clear that McNair is not entitled to habeas relief on his ineffective assistance of counsel claim.  That the Rule 32 court and the Court of Criminal Appeals adjudicated this claim on the merits is undisputed.  It is also clear that the decisions of those courts were not contrary to, and did not involve an unreasonable application of, clearly established federal law, and that they did not unreasonably determine the facts in light of the evidence before them.  Clearly established federal law mandates that, in order to succeed on his ineffective assistance of counsel claim, McNair would have to show that (1) his counsel's performance failed to meet the standard of a reasonably competent attorney; and (2) that this deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064.  Scrutiny of counsel's performance is highly deferential, and the burden is on the convicted defendant to show that counsel's performance was unreasonable.  Id. at 688-89, 104 S. Ct. at

14

2064-65. Despite bearing the burden of demonstrating his counsel's ineffectiveness, McNair adduced no evidence to support this claim during his Rule 32 proceedings. Because McNair offered no evidence to support his claim, the Court of Criminal Appeals was not unreasonable in denying relief, and its adjudication is entitled to deference under section 2254(d). The district court therefore erred in granting McNair's habeas petition on his ineffective assistance of counsel claim.[7]

## B. Extraneous Evidence in the Jury Room

McNair's next claimed basis for habeas relief is that jurors improperly considered extraneous evidence during their deliberations in the guilt phase of his trial. Evidence shows that Les Davis, a Christian minister who served as the foreman of McNair's jury, brought a Bible into the jury room during deliberations, read aloud from it, and led the other jurors in prayer. McNair now claims that the Bible, which had not been admitted into the record, constituted extraneous evidence and that the jurors' consideration of it violated his Sixth Amendment right to a fair trial. The Alabama Court of Criminal Appeals, applying state law, held that McNair was not entitled to relief. McNair, 706 So. 2d at 835-38. The district

---

[7] Because we have held that the district court erred in granting McNair an evidentiary hearing and in not deferring to the state court adjudication pursuant to 28 U.S.C. § 2254(d), we need not reach the State's argument that the district court erred in finding McNair's counsel ineffective in light of the evidence adduced at the federal evidentiary hearing.

court also denied relief on this claim.  McNair, 307 F. Supp. 2d at 1301-05.

McNair challenges this holding in his cross-appeal.

### 1. Procedural Bar

The district court began its discussion of McNair's extraneous evidence

claim by addressing the claim's procedural posture; we shall do the same.  As noted

above, McNair's claim in his federal habeas petition is that the jurors'

consideration of extraneous evidence deprived him of his right to a fair trial as

guaranteed by the Sixth Amendment to the United States Constitution.  However,

McNair argued to the state court that "the jury improperly considered and relied on

extraneous evidence in violation of Alabama law."  McNair, 307 F. Supp. 2d at

1301 (internal quotation omitted) (emphasis in original).  It is also clear that the

Court of Criminal Appeals addressed McNair's extraneous evidence claim solely

under state law principles.  McNair, 706 So. 2d at 837-38 (relying on standards set

out in Ex parte Troha, 462 So. 2d 953 (Ala. 1984), Ex parte Lasley, 505 So. 2d

1263 (Ala. 1987), and Roan v. State, 143 So. 454 (Ala. 1932)).  Because McNair

did not raise the federal constitutional issue in state court, the district court held

that the issue was procedurally defaulted.  McNair, 307 F. Supp. at 1301.

However, because the State failed to argue the procedural bar, the district court

held that the bar was waived and proceeded to consider the merits.  Id. at 1302.  For

the reasons discussed below, the district court properly held that McNair had procedurally defaulted his Sixth Amendment claim, but erred in holding that the state waived the default.

Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. 28 U.S.C. § 2254(b)(1); Kelley v. Sec'y for Dept. of Corr., 377 F.3d at 1343. In order to be exhausted, a federal claim must be fairly presented to the state courts. Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971). "It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Kelley, 377 F.3d at 1343-44 (citing Picard, 404 U.S. at 275-76, 92 S. Ct. at 512 and Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982)). Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." Picard, 404 U.S. at 275, 92 S. Ct. at 512 (citations omitted). While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual

17

foundation." Kelley, 377 F.3d at 1344-45 (citing Picard, 404 U.S. at 277, 92 S. Ct. at 513).

While these broad principles are relatively clear, the district court correctly noted that many courts have struggled to pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies. For instance, the Supreme Court recently wrote that a petitioner wishing to raise a federal issue in state court can do so "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351 (2004). If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair, 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillary, 474 U.S. 254, 257, 106 S. Ct. 617, 620 (1986)). This is consistent with settled law established by the Supreme Court. See Picard, 404 U.S. at 275, 92 S. Ct. at 512 ("We emphasize that the federal claim must be fairly presented to the state courts."). We therefore hold that "'[t]he exhaustion doctrine

requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" Kelley, 377 F.3d at 1345 (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)).

With these principles in mind, we now consider the extraneous evidence arguments that McNair presented in state court. In his initial brief to the Court of Criminal Appeals, McNair relied almost exclusively on state law. The section of his brief addressing his extraneous evidence claim was captioned: "MR. MCNAIR'S JURY IMPROPERLY CONSIDERED AND RELIED ON EXTRANEOUS EVIDENCE DURING ITS GUILT PHASE DELIBERATIONS IN VIOLATION OF ALABAMA LAW." All of the substantive argument contained in that section of McNair's brief addressed Alabama law, with the bulk of it consisting of McNair's attempt to analogize his case to Ex parte Troha, 462 So. 2d at 953. The relevant part of the brief contained only two references to federal law. The first was a citation to Jones v. Kemp, 706 F. Supp. 1534 (N.D. Ga. 1989), which was one of seven cases included in a string citation supporting McNair's claim that "jurors may not consider extraneous evidence during their deliberations and courts have consistently and repeatedly reversed convictions where such consideration has occurred." The other reference to federal law came in the closing paragraph of McNair's argument, when he wrote that the jurors'

19

consideration of the Bible violated his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." Importantly, McNair never mentioned, much less argued, the federal standard that extraneous evidence is presumptively prejudicial.[8] See Turner v. Louisiana, 379 U.S. 466, 473, 85 S. Ct. 546, 550 (1965); Remmer v. United States, 437 U.S. 227, 229, 74 S. Ct. 450, 451 (1954); United States v. Martinez, 14 F.3d 543, 550 (11th Cir. 1994) ("Prejudice is presumed the moment the defendant establishes that extrinsic contact with the jury in fact occurred." (internal quotation omitted)).

McNair's reliance on state law continued when he went before the Alabama Supreme Court. His nine page petition for certiorari on the extraneous evidence issue did not cite a single federal case; its only mention of federal law was a repetition of the concluding paragraph of his argument before the Court of Criminal Appeals. His brief in support of the petition included a verbatim restatement of the Jones v. Kemp citation and closing paragraph from his brief to the Court of Criminal Appeals and nothing more. Again, the presumption of prejudice that arises under federal law was never mentioned.

---

[8] Jones v. Kemp, 706 F. Supp. at 1558-60, the one federal case buried in McNair's string cite, also did not mention the presumption of prejudice.

McNair's references to federal law in his state habeas proceedings are exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement. See Kelley, 377 F.3d at 1344-50. McNair never cited any United States Supreme Court or federal appellate court case dealing with extraneous evidence, nor did he mention the presumption of prejudice that arises under federal law when jurors consider such evidence. Instead, he relied on state law opinions to argue a state law claim under a state law standard, citing a lone federal district court opinion (which itself did not mention the federal presumption of prejudice) only as part of a string citation illustrating various courts' holdings with respect to extraneous evidence in the jury room. A careful review of the record makes it clear that McNair did not fairly present his federal constitutional claim to the state court. He therefore failed to exhaust his state court remedies and is procedurally barred from raising his non-exhausted federal claim in his federal habeas petition.[9]

While the district court correctly held that McNair's Sixth Amendment claim is procedurally barred due to lack of exhaustion, it went on to consider the merits

---

[9] A habeas petitioner can only evade the exhaustion requirement by showing cause for and actual prejudice resulting from the default or by establishing a fundamental miscarriage of justice. Kelley, 377 F.3d at 1345 (citations omitted). McNair clearly cannot satisfy either of these exceptions, as there is no conceivable excusable cause for his failure to raise his Sixth Amendment claim in state court and no fundamental miscarriage of justice will result from its default.

of the claim after finding that the State waived the procedural bar. McNair, 307 F.

Supp. 2d at 1301-02. The district court based its waiver finding on the State's

failure to identify the Sixth Amendment issue as procedurally defaulted in its briefs

to the district court. Id. However, the State's failure to raise exhaustion does not

constitute a waiver under AEDPA, which mandates that "[a] State shall not be

deemed to have waived the exhaustion requirement or be estopped from reliance

upon the requirement unless the State, through counsel, expressly waives the

requirement." 28 U.S.C. § 2254(b)(3); see Dill v. Holt, 371 F.3d 1301, 1302 n.1

(11th Cir. 2004) (stating that AEDPA requires a court to address exhaustion when

it is not expressly waived by the State). We have conducted a careful review of the

State's briefs to this court as well as the district court and have found no express

waiver of the exhaustion requirement.[10]

Thus, the posture of this case is as follows: McNair has failed to properly

exhaust his extraneous evidence claim; the State has not expressly waived that

failure; and the claim could no longer be brought in state court if we dismissed

---

[10] At oral argument, McNair's counsel suggested that the State expressly waived the exhaustion requirement in its brief to this court. That is not the case. The State claimed in its brief that McNair's Sixth Amendment extraneous evidence claim should have been procedurally barred, and then simply repeated the district court's holding that the State had waived the procedural bar by failing to assert it.

McNair's petition for lack of exhaustion.[11]  The claim is therefore procedurally

barred.  Kelley, 377 F.3d at 1351.

This raises an interesting question.  Section 2253(b)(3), by its own language,

applies only to the exhaustion requirement.  It does not mention procedural default,

which, while related to exhaustion, is distinct.  However, we are persuaded that

section 2254(b)(3) applies with full force in cases such as this, where the

procedural bar arises only as a direct result of the petitioner's failure to exhaust his

state law remedies.[12]

It is well established that when a petitioner has failed to exhaust his claim by

---

[11]    There is no question that Alabama law would bar McNair from presently raising his Sixth Amendment extraneous evidence claim in state court.  See, e.g., Whitt v. State, 827 So. 2d 869, 876 (Ala. Crim. App. 2001) (holding that new claims raised in subsequent habeas petitions are barred as successive unless the petitioner can show cause and a miscarriage of justice).  We can therefore safely address McNair's other claims rather than remanding the case to the district court with instructions to dismiss the petition.  Kelley, 377 F.3d at 1351.

[12]    This presents an issue of first impression in this circuit.  In Perruquet v. Briley, 390 F.3d 505, 516 (7th Cir. 2004), the Seventh Circuit listed our opinion in Nelson v. Schofeld, 371 F.3d 768 (2004), as holding that § 2254(b)(3) applies to a procedural bar that arises from a failure to exhaust.  However, we doubt that our opinion actually so held.  The district court in Nelson had dismissed a habeas petition as procedurally barred, and this court did affirm.  Nelson, 371 F.3d at 769, 771.  In the process of affirming, Nelson did rely upon the express waiver requirement of section 2254(b)(3) in rejecting the petitioner's argument that the State had waived exhaustion.  Id. at 770 n.4.  However, the Certificate of Appealability in Nelson included only the issue of whether Nelson was required to petition the Supreme Court of Georgia for certiorari in order to exhaust his state remedies.  Id. at 769.  Neither the Certificate of Appealability nor the discussion in the opinion addressed whether § 2254(b)(3) applies not only to exhaustion, but also to a procedural bar that arises out of a failure to exhaust.  Thus, we doubt that Nelson definitively resolves this issue.  However, we do note that the result in Nelson is entirely consistent with our holding today.

23

failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar. See, e.g., Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1 (1991) (citations omitted) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas."). In such a situation, the Supreme Court has held that the petitioner has failed to properly exhaust his state court remedies and therefore has procedurally defaulted his claims. O'Sullivan v. Boerckel, 526 U.S. 838, 848, 119 S. Ct. 1728, 1734 (1999) (emphasizing that the relevant inquiry is "not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts" (emphasis in original)).

Because section 2254(b)(3) provides that the State can waive McNair's failure to properly exhaust his claim only by expressly doing so, it logically follows that the resulting procedural bar, which arises from and is dependent upon the failure to properly exhaust, can only be waived expressly. See Franklin v. Johnson, 290 F.3d 1223, 1238 (9th Cir. 2002) (O'Scannlain, J., concurring) ("There could be no procedural bar in this case without [petitioner's] failure . . . to exhaust his claim.

Thus, because the State's argument is based upon [petitioner's] failure to exhaust his claim, which, as a byproduct, renders it procedurally barred for our purposes, I would hold that the State did not waive this argument by failing to raise it below." (emphasis in original)). Thus, because the State did not expressly waive McNair's procedural default in this case, we hold that section 2254(b)(3) applies and that McNair is procedurally barred from raising his extraneous evidence claim.

In so holding, we join the Tenth Circuit, which has repeatedly applied section 2254(b)(3) and its express waiver requirement to procedural bars arising from a petitioner's failure to properly exhaust his state court remedies. See Ellis v. Hargett, 302 F.3d 1182, 1189 (10th Cir. 2002); Gonzalez v. McKune, 279 F.3d 922, 924-25 (10th Cir. 2002) (en banc) (relying on sectin 2254(b)(3) and its express waiver requirement in holding that a petitioner's unexhausted claim was procedurally barred even though the State asserted the bar for the first time at en banc oral argument); Hale v. Gibson, 277 F.3d 1298, 1327-28 and n.12 (10th Cir. 2000). We also note that a number of other circuits have discussed the issue without resolving it. See Kerns v. Ault, 408 F.3d 447, 449 n.3 (8th Cir. 2005) (implying that section 2254(b)(3) would apply to a procedural default arising out of a petitioner's failure to properly exhaust state court remedies, but finding an explicit waiver by the State); Perruquet v. Briley, 390 F.3d 505, 515-16 (7th Cir.

25

2004) (collecting relevant cases but not resolving the issue because the State had not actually waived the procedural bar arising out of the petitioner's failure to exhaust). Only the Ninth Circuit, in its opinion in <u>Franklin</u>, 290 F.3d at 1231, has adopted the contrary view.[13]

In holding that section 2254(b)(3) applies to this particular procedural bar, we emphasize that this holding applies <u>only</u> to a procedural bar <u>that arises out of a failure to exhaust state remedies</u>. Such a procedural bar is to be distinguished from one that arises, not because of a failure to exhaust, but rather because the state court will not hear the claim due to a state procedural bar. For example, most states require contemporaneous objections and often decline to entertain a claim because of a failure to object. Such a claim may well be fully exhausted, but nevertheless

---

[13] We agree with the rationale of Judge O'Scannlain's concurring opinion in <u>Franklin</u>, and we respectfully disagree with the majority opinion which Judge O'Scannlain criticized. We believe that the <u>Franklin</u> majority misplaced its reliance on the Supreme Court's decision in <u>O'Sullivan</u>. As indicated in the text above, the Court in <u>O'Sullivan</u> recognized the interplay of the concepts of exhaustion and procedural bar and held that the relevant claim was procedurally barred because of the habeas petitioner's failure to properly exhaust the claim in the state courts. <u>O'Sullivan</u>, 526 U.S. at 848, 119 S. Ct. at 1734. Indeed, the <u>Franklin</u> majority's approach – rigidly limiting the exhaustion concept to situations in which the state remedies were available at the time of the federal petition – seems to be drawn more from Justice Stevens' dissent in <u>O'Sullivan</u>. 526 U.S. at 851-56, 119 S. Ct. at 1735-38 (Stevens, J., dissenting) (asserting that the concept of exhaustion assumed the continued availability of state remedies and criticizing the majority for focusing on exhaustion in a context in which state remedies were no longer available). Like Justice Stevens' dissent, the <u>Franklin</u> majority relies upon a quotation from <u>Engle v. Isaac</u>, 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 1570 n.28 (1982), suggesting that the exhaustion concept applies only when remedies are still available at the time of the federal petition. However, the quotation from <u>Engle</u> is not only dicta, but it also fails to account for <u>O'Sullivan</u>'s later holding discussing the interplay of the two doctrines when the state remedies are no longer available and recognizing the dependency of the bar upon the failure to exhaust.

procedurally barred in federal court because of the State's invocation of its bar for failure to object. In such a case, the procedural bar in federal court has nothing to do with exhaustion, and therefore section 2254(b)(3) would not apply.[14]

In short, the district court correctly concluded that McNair's extraneous evidence claim is procedurally barred due to lack of exhaustion, but it erred in concluding that the State has waived the procedural bar. Accordingly, the district court should have dismissed this claim as procedurally barred.

2. The Merits

Even if McNair's scattered references to federal law in his state court proceedings did satisfy the exhaustion requirement, or even if the State had waived the procedural bar, and we reiterate that neither is true in this case, McNair still

---

[14] Indeed, our own case of Romine v. Head, 253 F.3d 1349 (11th Cir. 2001), is such a case. There, the relevant claim was clearly exhausted, having been raised on direct appeal and in the state habeas court. The latter court declined to address the claim because it had already been addressed and decided by the Georgia Supreme Court. Id. at 1363. The federal district court noted that Romine had failed to preserve the issue by failing to object at trial, but that there was no procedural bar because the Georgia Supreme Court had decided the issue on the merits. However, this court noted that even "if there were any procedural bar ... , the State has waived it. The State did not assert a procedural bar to this specific claim in the district court, and has not argued one as to it in this [c]ourt." Id. at 1364. Romine is distinguished from the instant case, and provides no guidance for it, because the only possible procedural bar there did not arise out of a failure to exhaust state remedies. Rather, the possible bar resulted from a failure to object at trial. Indeed, the claim was fully exhausted. We note also that the Romine panel properly did not mention § 2254(b)(3).

Similarly, Jackson v. Johnson, 194 F.3d 641, 652 n.35 (5th Cir. 1999), declined to apply § 2254(b)(3) to a procedural bar that did not arise from a failure to exhaust state remedies. Rather, the default in that case arose from a failure to comply with Texas' contemporaneous objection rule. Id. at 651-52. See also Franklin v. Johnson, 290 F.3d at 1238-39 (O'Scannlain, J., concurring) (similarly distinguishing Jackson v. Johnson).

would not be entitled to relief on this claim. In the peculiar circumstances of this alternative holding, we will assume arguendo, but expressly not decide, that the claim is best reviewed de novo.[15] However, relevant findings of fact by the state court are still presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

Under federal law, any evidence that does not "come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel" is presumptively prejudicial. Turner, 379 U.S. at 473, 85 S. Ct. at 550; see also Remmer, 347 U.S. at 229, 74 S. Ct. at 451; Martinez, 14 F.3d at 550. In order to give rise to this presumption, a defendant need only demonstrate that jurors had contact with extrinsic evidence. Martinez, 14 F.3d at 550. Once the defendant makes this showing, the State bears the burden of rebutting the presumption by showing that the jurors' consideration of the extrinsic evidence was harmless to the defendant. Remmer, 347 U.S. at 229, 74 S. Ct. at 451; Martinez, 14 F.3d at 550. When evaluating whether the State has met its burden, courts are to consider the totality

---

[15]     If McNair's scattered references to federal law in state court were enough to satisfy the exhaustion requirement, then it is clear the de novo review would be appropriate. See Romine v. Head, 253 F.3d 1349, 1365 (11th Cir. 2001) (holding that this court applies de novo review when a state court fails to apply federal law or an identical state law rule to a federal claim). On the other hand, if the federal claim was not fairly presented to the state courts, but the procedural default was waived, the appropriate review is less clear.

of the circumstances surrounding the introduction of the extraneous evidence to the jury. See Remmer v. United States, 350 U.S. 377, 379, 76 S. Ct. 425, 426 (1956). Our case law indicates that the factors to be considered include the heavy burden on the State, the nature of the extrinsic evidence, how the evidence reached the jury, and the strength of the State's case. Martinez, 14 F.3d at 550.

Because it is undisputed that jurors in the guilt phase of McNair's trial considered extrinsic evidence during their deliberations, our analysis focuses on whether the State can rebut the resulting presumption of prejudice. We believe that three factors are crucial to the analysis in this case: (1) the factual findings of the state court, (2) the manner in which the evidence reached the jury, and (3) the strength of the State's case against McNair. Each will be discussed in turn.

McNair raised his challenge to the jury's consideration of extraneous material during the state collateral proceedings. Both the trial court and the Court of Criminal Appeals carefully considered the claim on the merits pursuant to state law, and both courts made crucial findings of fact which are relevant to our analysis of the issue under federal law. Although McNair argued that the foreman urged the jurors to find McNair guilty based on passages from the Bible, the trial court rejected that argument, finding as a fact that two passages were read and that "[n]either of these scriptures contain material which would encourage jurors to find

29

a defendant guilty or to recommend the death penalty."[16]  McNair v. State, 706

So.2d at 837 (quoting the Rule 32 court's order).

The Court of Criminal Appeals also made several crucial findings of fact.

Confirming the Rule 32 court's finding, it found that McNair's "assertions in his

briefs . . . that [Davis, the minister who served as foreman] urged the jurors to find

him guilty based on passages from the Bible and that the jury relied on the Bible in

finding him guilty are not supported by the record." McNair, 706 So.2d at 838.

The Court of Criminal Appeals also made crucial findings with respect to the

nature and character of the readings, their intent, and their effect on the jury.  These

findings include the following:

> [T]he extraneous material, i.e., reading from the Bible and praying in
> the jury room during deliberations, was not of such a character or
> nature as to indicate bias or corruption or misconduct that might have
> affected the verdict.
>
> ...
>
> From the testimony at the hearing, we conclude that the prayers and
> scripture readings in the jury room were intended to encourage, and
> had the effect of encouraging, the jurors to take their obligation
> seriously and to decide the question of guilt or innocence based only
> on the evidence presented from the witness stand in open court.
>
> ...

---

[16]     The two Bible verses read included the familiar Psalm 121, and Luke 6:37.  The
latter verse reads as follows: "Judge not, and ye shall not be judged; condemn not and ye shall
not be condemned; forgive, and ye shall be forgiven ...."

> A fair reading of [Davis's] testimony, in its entirety, leads inescapably to the conclusion that his readings from the Bible and prayers in the jury room ... did not encourage its members to consider anything other than the evidence presented in the court in arriving at a verdict. There is nothing here to suggest that the jury did anything other than base its verdict on the evidence presented in open court in the trial of the case.

Id. at 838. These findings of fact are of course entitled to a presumption of correctness, unless McNair demonstrates by clear and convincing evidence that they are erroneous. 28 U.S.C. §2254(e)(1). McNair has made no such showing. We thus readily conclude that the foregoing state court findings of fact establish the relevant facts in this case. Moreover, our own review of the record persuades us that the state court findings are amply supported.[17]

Because we know the innocuous nature of the passages that Davis read, and because we know that the passages and prayers merely had the "effect of encouraging the jurors to take their obligations seriously and to decide the question of guilt or innocence based only on the evidence," we readily conclude that the State has easily carried its burden of rebutting the presumption of prejudice.

In addition to the innocuous nature of the extrinsic evidence and the fact that it did not distract the jury from basing its verdict on the evidence presented, two other factors indicated in the case law also strongly favor the State. As the district

---

[17] Indeed, even if the state court findings of fact were entitled to no deference at all, our own examination of the evidence indicates that nothing judgmental or prejudicial was read.

31

court noted, the extraneous evidence in this case was brought in by a juror, and did not carry the imprimatur of the court.[18] McNair, 302 F. Supp. 2d at 1304. Additionally, the state offered overwhelming and largely uncontested evidence of McNair's guilt.[19] Both of these factors favor the state, and, when combined with the state's findings of fact, readily establish that the jury's consideration of extraneous evidence was harmless in this case.

Because the state could successfully rebut the presumption of prejudice arising from the jury's consideration of extraneous evidence, McNair would not have been entitled to relief on this claim even if he had properly raised it in state court. The district court properly rejected this claim.

## C. Racial Discrimination in Jury Selection

McNair's final claim is that the State's use of peremptory challenges to strike a number of African-American potential jurors violated his Fourteenth Amendment

---

[18] The instant case is unlike Jones v. Kemp, 706 F. Supp. at 1560, where the jurors consulted a Bible with the express permission of the trial judge. The instant case is also very different from Romine, 253 F.3d at 1358-71, which addressed a related due process issue. The challenge there was to a closing argument in which the prosecutor urged the jurors in the sentencing phase to follow the law of God, which the prosecutor argued mandates death for one who kills his parents. Id. at 1368-69. Additionally, the case itself was saturated with evidence relating to religion; the jury was sequestered during deliberations in a Baptist church; and there was evidence that at least one or two jurors were influenced by the prosecutor's improper argument.

[19] Because a separate jury considered the death penalty, the extraneous evidence issue relates only to the guilt phase.

rights under <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712 (1986).  McNair raised this claim before the Court of Criminal Appeals and the Supreme Court of Alabama on direct appeal, and both courts denied relief.  <u>Ex parte McNair</u>, 653 So. 2d 353, 354-58 (Ala. 1994); <u>McNair</u>, 653 So. 2d at 323.  The district court, after reviewing the state court opinions and conducting an independent review of the record, likewise denied relief on this claim.  <u>McNair</u>, 307 F. Supp. 2d at 1293.  We agree that McNair has not made out a claim for relief under <u>Batson</u>.

In <u>Batson</u>, the United States Supreme Court established a three-step test for evaluating claims of racial discrimination in jury selection.  The defendant must first establish a prima facie case by producing evidence sufficient to support the inference that the prosecutor exercised peremptory challenges on the basis of race. <u>Johnson v. California</u>, ___ U.S. ___, 125 S. Ct. 2410 (2005); <u>Batson</u>, 476 U.S. at 96, 106 S. Ct. at 1723.  The burden then shifts to the State to rebut the defendant's prima facie case by offering race-neutral explanations for its challenges.  <u>Batson</u>, 476 U.S. at 97, 106 S. Ct. at 1723.  The State's proffered explanation at this stage need not be "persuasive or even plausible . . . the issue is the facial validity of the prosecutor's explanation."  <u>Purkett v. Elem</u>, 514 S. Ct. 765, 768, 115 S. Ct. 1769, 1771 (1995) (internal quotation omitted).

If both sides carry their burdens, it is left to the court to determine whether

the defendant has proven purposeful discrimination. Id. at 98, 106 S. Ct. at 1724.

At this point, "the decisive question will be whether counsel's race-neutral

explanation . . . should be believed." Hernandez v. New York, 500 U.S. 352, 365,

111 S. Ct. 1859, 1869 (1991) (plurality opinion). This is "a pure issue of fact,

subject to review under a deferential standard . . . [and] peculiarly within a trial

judge's province." Id. at 364-65; 111 S. Ct. at 1869 (internal quotation omitted).

Also, because this claim was decided on the merits by the Alabama courts, McNair

is not entitled to habeas relief unless he can "demonstrate that [the] state court's

finding of the absence of purposeful discrimination was incorrect by clear and

convincing evidence . . . and that the corresponding factual determination was

'objectively unreasonable' in light of the record." Miller-El v. Cockrell, 537 U.S.

322, 348, 123 S. Ct. 1029, 1045 (2003); see 28 U.S.C. § 2254(d)-(e); Miller-El v.

Dretke, 545 U.S. ___, 125 S. Ct. 2317, 2325 (2005). This standard is demanding,

but not insurmountable. Miller-El, 545 U.S. at ___, 125 S. Ct. at 2325.

McNair's trial jury was selected from a sixty-four member venire that

included eighteen African-Americans. Ex parte McNair, 653 So. 2d at 355. The

prosecutor used eleven of his twenty-six peremptory challenges to strike African-

Americans; the remaining seven African-American members of the venire served

34

on McNair's jury.[20]  Id.  McNair argues both that the totality of the circumstances of the jury selection process indicates a Batson violation and that three particular strikes constituted violations.  We address each of these claims in turn.

1. The Jury Selection Process as a Whole

McNair presents three arguments intended to cast doubt on the jury selection process: (1) that the district attorney's office that handled McNair's prosecution has a history of racial discrimination; (2) that the prosecutor did not question ten of the eleven stricken African-American venire members about the specific area of concern that prompted the use of the peremptory challenge; and (3) that the prosecutor relied on "vague and unsubstantiated notes" from an assistant district attorney as the basis for challenging five of the venire members.  We readily discount the latter two assertions.  The prosecutor's failure to question most of the stricken African-American venire members about the specific concern that prompted the use of the challenge is not very persuasive in this case.  For example, it is not likely to have been productive to question a juror about age or a prior

_____

[20]    The Supreme Court of Alabama noted that the county from which the jury pool was drawn was approximately forty percent black, the venire twenty-eight percent black, and the ultimate jury fifty-eight percent black.  McNair, 653 So. 2d at 356.  It held that these statistics negated a finding of disparate impact and, as a part of its totality of the circumstances analysis, that they were a relevant factor weighing against a finding of discriminatory intent.  Id.  After viewing the totality of the circumstances, we cannot conclude that this was an unreasonable determination of the facts.

35

misdemeanor or a bad reputation.  Moreover, the prosecutor also struck white jurors without such specific questioning.  With respect to McNair's assertion that the prosecutor relied on vague and unsubstantiated notes from his assistant, McNair fails to explain why a prosecutor's reliance on notes and information furnished by an assistant is any indication at all of racial bias.  Furthermore, our review of the notes does not persuade us that they were unduly vague or unsubstantiated.  Although McNair's assertion that the district attorney's office had a history of racial discrimination is a matter of some concern, we will consider that as part of our totality of the circumstances analysis after discussing McNair's challenges with respect to individual jurors.

2. The Individual Challenges

A defendant can establish a Batson violation by demonstrating that any single strike was the result of purposeful discrimination.  Cochran v. Herring, 43 F.3d 1404, 1412 (11th Cir. 1995).  In an attempt to do this, McNair argues that his prosecutors peremptorily challenged three specific venire members in violation of Batson.  Before discussing the merits of each claim, we note that in no instances does McNair argue that the prosecutor's proffered reasons for the strikes were facially discriminatory.  We also note that the state trial court made a finding of fact that the strikes were not racially motivated, and that the Alabama Supreme

Court concluded that the trial court's ruling was not clearly erroneous. <u>McNair</u>, 653 So. 2d at 355-56. Thus, the only question facing this court is whether McNair can show by clear and convincing evidence that the state court finding was erroneous.

McNair's first claim focuses on James McAllister. The prosecutor's proffered reason for striking McAllister was that the latter was not from Henry County. In response to a question during voir dire, McAllister gave his address as Route 3, Box 605, which is in Henry County, and stated that he worked in Eufala, Alabama, which is not in Henry County. He remained silent when the trial judge asked the entire venire if any of them resided outside of Henry County. Finally, the notes supplied by the prosecutor's assistant suggested that McAllister did not live in Henry County. Presented with this information, the prosecutor reasonably could have believed that McAllister did not live in Henry County. McAllister clearly worked in another county, his address may have implied residence in another county, and his silence in the face of a general question from the trial judge, while informative, is not dispositive. Although the prosecutor's reason for striking McAllister was based on a belief that ultimately proved incorrect, this does not establish by clear and convincing evidence that the state court's finding of fact was erroneous, and McNair presents no additional evidence to support his contention.

McNair's next claim focuses on Allen Boatwright. The prosecutor struck Boatwright because the latter had a prior misdemeanor conviction. McNair argues that this reason was pretextual because the prosecutor had earlier, when asking if any venire members or their relatives or close friends had been prosecuted by that particular district attorney's office, stated that he was not interested in misdemeanors. This argument is not persuasive. After narrowing the field somewhat with his initial inquiry, the prosecutor reasonably could have decided that, of the remaining venire members, he would prefer those without prior criminal violations. We also note that the prosecutor struck white venire members who had prior misdemeanor convictions. The prosecutor's proffered reason was plausible and race-neutral, and McNair offers no evidence to support his claim of pretext.

The subject of McNair's third claim is David Marsh. The prosecutor struck Marsh on the basis of a recommendation from an assistant district attorney who knew Marsh and his apparently poor reputation in the community. This reason is facially neutral, and McNair offered no evidence that it was pretextual. In the absence of any evidence that the state's proffered facially neutral reason was pretextual, McNair cannot overcome the presumption favoring the state court's determination.

3. <u>The Totality of the Circumstances</u>

After a careful review of the record, we cannot conclude that the totality of the circumstances provides clear and convincing evidence that the state court's finding of the absence of purposeful discrimination was incorrect, nor can we conclude that the court's corresponding factual determination was objectively unreasonable in light of the record before the court. As noted in the preceding discussion, McNair offers virtually no evidence to indicate that the prosecutor's articulated legitimate reasons for the individual strikes were pretextual. McNair's challenges in that regard are mere speculation lacking any persuasive force.

The only argument with any force at all is McNair's list of cases in which convictions obtained by this district attorney's office have been reversed or criticized on the basis of <u>Batson</u>. We cannot conclude that this argument can carry McNair's heavy burden. We note initially that McNair himself admits that a prosecutor's history of discrimination, while a relevant consideration, is not dispositive. In addition, McNair has wholly failed to connect any conduct criticized in the cited cases to McNair's own prosecutor, much less his conduct in this case. Such disconnected history cannot carry McNair's burden, especially when the prosecutor's articulated, legitimate reasons for each strike remain

virtually unimpeached.[21]

Having considered the totality of the circumstances, and in light of the presumption enjoyed by the state court findings of fact, 28 U.S.C. §2254(e)(1), we cannot conclude that McNair has rebutted the presumption of correctness by clear and convincing evidence. Accordingly, we cannot conclude that the state court decision was based on an unreasonable determination of facts in light of the evidence presented to the state court, 24 U.S.C. 2254(d)(2); and thus, the district court correctly denied habeas corpus relief with respect to this Batson claim.

## IV. CONCLUSION

We hold that the district court erred in granting McNair an evidentiary

---

[21] In suggesting that this court's opinion in Cochran, 43 F.3d at 1410, implies that evidence such as that presented by McNair can be determinative of a Batson claim, the district court either exaggerates the evidence in the instant case, misreads Cochran, or both. In Cochran, there was strong evidence that the prosecutor's office had a policy of striking black venire members on the basis of their race in effect at the time of defendant's trial. Several former prosecutors who served at the relevant time so testified, and Cochran's own prosecutor testified that black jurors were less reliable, more distrustful of the police, less likely to return a death penalty, and more likely to identify with a black defendant. Id. Cochran's prosecutor also provided no specific non-racial reasons for his strikes in that case. On the basis of that evidence, it was clear that race was a determining factor in the exercise of peremptory challenges removing seven of nine available black jurors, leaving only one to serve, plus one alternate. As indicated in the text, the circumstances here are very different. The State offered legitimate, non-racial reasons for each strike, and McNair proffered virtually no evidence indicating that the reasons were pretextual. And in this case, the state courts found as a fact that the strikes were not racially motivated. McNair has failed to show by clear and convincing evidence that the finding is erroneous.

hearing and in holding that he was entitled to habeas relief on his ineffective assistance of counsel claim. The district court's order granting habeas relief on that claim is therefore REVERSED. We also hold that the district court erred in failing to apply the procedural bar with respect to McNair's extraneous evidence claim. However, we need not disturb the district court's order on that issue, as it correctly held that McNair was not entitled to relief on the merits. The district court also correctly held that McNair was not entitled to relief on his <u>Batson</u> claims. The district court's order denying McNair's petition with respect to his extraneous evidence claim and <u>Batson</u> claims is therefore AFFIRMED.

**AFFIRMED IN PART AND REVERSED I N PART.**